UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action 15-27-HRW

SOUTHERN OHIO TRENCHING &
EXCAVATING, INC.,                                                                PLAINTIFF,

v.                          **MEMORANDUM OPINION AND ORDER**

INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 181,                                DEFENDANT.

This matter is before the Court upon the parties' cross motions for summary judgment [Docket Nos. 19 and 20]. The motions have been fully briefed by the parties [Docket Nos. 19-1, 20-1, 23, 24, 25 and 26]. For the reasons set forth herein the Court finds that Defendant International Union of Operating Engineers, Local 181 is entitled to judgment as a matter of law.

**I.**

This is an action pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 ("LMRA") and the Federal Arbitration Act, 9 U.S.C. § 10(a), to vacate Arbitrator John Remington's arbitration award dated March 16, 2015 issued in favor of Defendant, International Union of Operating Engineers, Local 181 and against Southern Ohio Trenching & Excavation, Inc. ("Southern Ohio") in a labor dispute between the parties.

Plaintiff Southern Ohio operates a contracting business in Ironton, Ohio and performs excavation and installation work on municipal utilities projects in southern Ohio and northeastern Kentucky. Mark Bamer is the president of Southern Ohio and was the only employee of Southern Ohio who was a member of Defendant Local 181. Southern Ohio's

remaining employees were either members of other unions or not members of any labor union.

Since approximately 2003, Southern Ohio and Local 181 maintained what Plaintiff describes as a " non-exclusive referral relationship for labor." To-wit, Local 181 made referrals of members to work on Southern Ohio's projects, but Southern Ohio was not obligated to use Local 181 members; nor was Local 181 obligated to provide labor for Southern Ohio's projects. Notably, Local 181 did not bargain for or on behalf of the interests of Southern Ohio's employees.

Mark Bamer, signed numerous "Acceptance[s] of Agreement" beginning in 2003 and renewed them, most recently in 2012. Section 3 of these Agreements, "Disputes", specifically refer to arbitration [Docket No. 1-2]. These Agreements bound Southern Ohio to what is referred to as the "Highway Contractor's Agreement", which is an agreement between Local 181 and Highway Contractor's, an organization of Kentucky contractors, and includes a specific Grievance Procedure (referred to as "Article 8"), including arbitration [Docket No. 1-1]. Further, the Highway Contractor's Agreement requires Southern Ohio to hire only Local 181's on its Kentucky-based projects.

In 2014, Southern Ohio was awarded a contract for installation of a sanitary sewer system for the City of South Shore, Kentucky (the "South Shore project"). Southern Ohio used its own employees, including its own operating engineers, on the South Shore project and, also, subcontracted a portion of the project to C.J. Hughes Construction, a Huntington, West Virginia contractor whose employees are not Local 181's but members of another union.

In March 2014, Local 181 filed a formal grievance against Southern Ohio, alleging that Southern Ohio had violated the Agreement by not using members of Local 181 on the South

Shore project [Docket No. 1-3]. The matter proceeded to arbitration. However, Southern Ohio objected to the arbitrability of the dispute and the arbitrator's jurisdiction of the matter on 3 grounds. First, it contended that there was no agreement to arbitrate. Second, it argued that even if there was an agreement, it had been repudiated by Southern Ohio. Finally, Southern Ohio maintained the dispute involves an interpretation of statutory law, and is thus, not subject to arbitration [Docket No. 1-5]. Southern Ohio communicated its objections to the Arbitrator, John Remington, who notified Southern Ohio that he would proceed with the arbitration unilaterally if Southern Ohio did not appear.

The arbitration was conducted in Ashland, Kentucky on December 2, 2014. Southern Ohio participated in the arbitration and reiterated its objections during the proceeding.

Arbitrator Remington concluded that Southern Ohio violated the Agreement by not employing members of Local 181 on the South Shore project and awarded damages and directed Southern Ohio pay Local 181 the wages it payed to the non-Union members on the South Shore Project and make appropriate contributions to the pension fund [Docket No. 1-11].

This lawsuit followed, wherein Southern Ohio seeks a judgment to vacate and set aside the Arbitrator's award and dismisses the grievance of Local 181.

## II.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, expresses the federal policy favoring enforcement of arbitration awards. *See generally Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). To

encourage parties to agree to arbitration, the FAA ensures that "arbitration awards are both fair and final." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 475 (6th Cir.2006). The Act promotes finality "by substantially limiting the occasions for judicial review," *id.*, and expressing a "presumption that arbitration awards will be confirmed." *Andersons, Inc. v. Horton Farms, Inc.,* 166 F.3d 308, 328 (6th Cir.1998). Under the FAA, courts may vacate an arbitration award under the four express statutory grounds in § 10(a)(1)-(4). And, though accompanied by some uncertainty, *see Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), the Sixth Circuit also recognizes that judicial intervention may be appropriate where arbitrators act with "manifest disregard for the law," *see, e.g., Grain v. Trinity Health,* 551 F.3d 374, 380 (6th Cir.2008), *cert. denied,* 558 U.S. 820, 130 S.Ct. 96, 175 L.Ed.2d 30 (2009); *Coffee Beanery, Ltd. WW, L.L.C.*, 300 Fed.Appx. 415 (6th Cir.2008), *cert. denied,* 558 U.S. 819, 130 S.Ct. 81, 175 L.Ed.2d 28 (2009).

In light of these policies, a party seeking vacatur of an arbitration award "must clear a high hurdle." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 1767, 176 L.Ed.2d 605 (2010). "When courts are called on to review an arbitrator's decision, the review is very narrow; [it is] **one of the narrowest standards of judicial review in all of American** jurisprudence *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir.2008) (emphasis added) (*quoting Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir.2005)); *see also NCR Corp. v. Sac–Co., Inc.*, 43 F.3d 1076, 1079 (6th Cir.1995) (noting that a court's review of an arbitration award "is generally extremely narrow"). Thus, as the U.S. Supreme Court has long held, "the courts play only a limited role when asked to review the decision of an arbitrator," and

4

are not authorized to reconsider the merits of an award. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Even "the arbitrator's 'improvident, even silly, fact-finding does not provide a basis for a reviewing court to refuse to enforce an award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (*quoting Misco*, 484 U.S. at 39, 108 S.Ct. 364). Accordingly, as the Sixth Circuit has succinctly advised, "[C]ourts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay,* 442 F.3d at 476 . "If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Id.* (*quoting Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995)).

### III.

A.  The grievance was properly subject to arbitration.

Before examining the arbitrator's award, the undersigned must resolve the threshold issue of whether arbitration was appropriate. Stated another away, was there a valid, enforceable agreement to arbitrate between the parties?

Given the deferential standard of review, Southern Ohio endeavors mightily to dispute the existence of a valid agreement to arbitrate. It contends that no such agreement existed as the arbitration was bourne of Article 8 of the Highway Contractor's Agreement, which was not signed by Southern Ohio. It maintains that without a signature, there was no "meeting of the minds" with regard to arbitration.

5

Defendant cries foul and points out that Southern Ohio, Mark Bamer, specifically, signed numerous Agreements, over the course of several years, which specifically bound Southern Ohio to the Highway Contractors Agreement and both agreements contain clear language requiring arbitration. Defendant suggests, and this Court is inclined to agree, that Plaintiff's argument in this regard is merely a smoke screen for its refusal to abide by the Agreements that Bamer signed. Nor is there anything in the record to suggest that Bamer was tricked, defrauded or otherwise coerced into signing the agreements. To the contrary, during the Arbitration Hearing, Bamer testified that he signed it but did not read it. He "just wanted to move on and to business." [Docket No. 19-9 and 10, pp. 71-73]. That Bamer was not involved in the negotiations of the Highway Contractors Agreement, he did negotiate the participation Agreements, which, by their plain terms, bound him to the former, an arrangement which Southern Ohio followed and benefitted from, for eight years. Therefore, Southern Ohio's attempt to avoid arbitration by argument the absence of an agreement to arbitrate is in vain.

In what can only be described as a *Hail Mary* pass, Plaintiff next argues that the Agreements signed by Bamer as well as the Highway Contractor Agreement are "pre-hire" agreements, which can be cancelled, and, in some case, unilaterally repudiated, at the end of their terms. Plaintiff maintains that The Highway Contractors Agreement was a Section 8(f) pre-hire agreement. It argues that the Agreement was a master agreement between the Union and an association of contractors of which Southern Ohio was not a member. According to Plaintiff, the Agreement purported to cover current employees as well as employees that Southern Ohio had not yet hired. There was no election to certify Local 181 as the exclusive bargaining agent of

Southern Ohio's employees. It points out that only one Southern Ohio employee was a member of Local 181. Therefore, Southern Ohio was a single employee bargaining unit to a pre-hire agreement and, as such, it had the right to unilaterally repudiate the Agreement, which it did. Once the parties' relationship ended, Southern Ohio had no further obligations to Local 181, and there was no valid collective bargaining agreement or arbitration provision.

In making its argument, Plaintiff relies exclusively upon the 6th Circuit's opinion in *Baker Concrete Construction v. Reinforced Contractors Ass'n*, 2016 WL 1594591 (April 16, 2016). Baker Concrete was an Ohio construction firm that occasionally subcontracted work to smaller firms. Baker Concrete became a signatory to a master multi-employer collective bargaining agreement between a union and a contractors association of which Baker Concrete was not a member. In 2013, Baker Concrete notified the union that it was repudiating the master agreement. The union filed a grievance alleging that Baker Concrete had violated the master agreement. Baker Concrete objected to arbitration, arguing that it had repudiated the agreement. Baker Concrete appeared at arbitration to preserve its objections to the arbitration. The arbitrator found that Baker Concrete was in violation of the master collective bargaining agreement. Baker Concrete filed an action in the Southern District of Ohio seeking to vacate the arbitration award. The district court sustained Baker Concrete's motion for summary judgment. On appeal, the Sixth Circuit determined that the agreement was a Section 8(f) pre-hire agreement because the union had not been selected by a majority of Baker Concrete employees to represent it. The court noted that only one of Baker Concrete's employees was a member of the union and that the language of the master collective bargaining agreement showed that is was intended to cover

7

current employees as well as employees that Baker Concrete had not yet hired. Nevertheless, the court held that, as a Section 8(f) pre-hire agreement, the agreement could be cancelled by Baker Concrete at any time. When Baker Concrete repudiated the pre-hire agreement, its relationship with the union ended, and there was no agreement to enforce. Therefor, the arbitrator did not have the authority to decide whether the dispute was governed by the agreement, did not have authority to determine that Baker Concrete had violated the agreement, and affirmed summary judgment vacating the arbitrator's decision.

At first blush, *Baker* appears to be strikingly similar to the instant case. However, in *Baker*, Judge Batchelder found that it was undisputed that Baker had never hired any employees under the Contract for several years prior to the repudiation of the Collectively Bargained Agreement. Further Baker sent specific letters to the Union stating that it was no longer under any contractual obligation. By contrast, in this case, Southern Ohio had hired Local 181's in the past, had sought and retained referrals from the Union, had signed agreements and received fringe benefits from the Health and Welfare Fund and Pension Fund under the contract for over eight years.

As for notice, in this case, unlike *Baker*, there were no letters, or any other form of communication, purporting to repudiate or cancel the agreement. Moreover, *Baker* involved a one-man bargaining unit, which is a required factual precedent for **unilateral** repudiation. Otherwise, pre-hire agreements are are enforceable and binding and cannot be revoked until the end of the agreement. As such, *Baker* is distinguishable, and thus, irrelevant.

8

Plaintiff also points out that the Arbitration clause of the Highway Contractor's Agreement, a.k.a. Article 8, excludes disputes involving the interpretation of a statute from its grievance procedure. Plaintiff seizes upon this exception. It points out Local 181's grievance charged it with violating the sub-contractors provision in Article A-5 of the Highway Contractors Agreement. That provision states in pertinent part:

> When the Employer signatory to this Agreement subcontracts any of his work covered by this Agreement that the Employer normally, customarily, and traditionally performs, it shall be subcontracted subject to all terms and conditions of this Agreement, and the Employees of such subcontractor or subcontractors shall be required to become members of the Union as a condition of employment, as provided under Article 7 of the Agreement, except by mutual agreement of the parties.

Southern Ohio asserts that the provision violates Section 8(e) of the National Labor Relations Act as a prohibited secondary activity clause, since the clause is not designed to preserve or protect traditional work performed by Local 181, but rather to increase Local 181's membership by requiring employees of third parties to join Local 181. Since the purpose of the clause was to increase union membership, and not to protect Local 181's work, the clause was unenforceable under Section 8(e) of the Act, 29 U.S.C. § 185. Plaintiff concludes, as the clause violates a federal statute, a dispute based upon the clause necessarily involves the interpretation of the federal statute and, as such, is not with the purview of Grievance Procedure set forth in the Agreement. Therefore, according to Plaintiff, the arbitrator exceeded his authority by adjudicating the claim and awarding damages.

Plaintiff cites a single 6th Circuit case in this regard: *Becker Electric v. International*

9

*Brotherhood of Electrical Workers*, 927 F.2d 985 (6th Cir. 1991), a *per curiam* opinion wherein Becker Electric brought an action against a union, alleging that strike was unlawful because purpose was to force employer and related entities to agree to a "work preservation" clause which violated the NLRA's prohibition on secondary activities. The United States District Court for the Southern District of Ohio, Judge Weber granted summary judgment for union, and Becker appealed. The Court of Appeals held that "work preservation" clause in collective bargaining agreement which made terms of agreement applicable to other entities controlled by employer did not violate prohibition on agreements or activities with secondary effects on neutral employers, where union's purpose was not to coerce neutral employers or suppliers to withhold business relations with employer, but to prevent primary employer from avoiding collective bargaining agreement by performing union jobs through other entities it controlled.

Yet Plaintiff fails to explain how *Becker* changes the landscape in **this** case. Nor does this Court see its relevance. As Defendant states, the NLRA's prohibition against secondary boycotts is not implicated in this case and the issue is the enforcement of the subcontracting clause to which Plaintiff agreed.

The arbitration clauses within both agreements are enforceable and, as such, the arbitrator had proper jurisdiction of Local 181's grievance.

**B.    The arbitrator's award is valid and enforceable.**

As explained *supra*, this Court's review of the arbitrator's award is extremely limited. Indeed, the cases are few are far between in which a court has called into question the decision of an arbitrator who properly presided over a grievance. The Sixth Circuit has held that arbitration

awards can be vacated in only four scenarios:

> (1) when the award conflicts with the express terms of the collective bargaining agreement;
>
> (2) when the award imposes additional requirements that are not expressly provided in the agreement;
>
> (3) when the award is without rational support or cannot be rationally derived from the terms of the agreement; or
>
> (4) when the award is based on general considerations of fairness and equity instead of the precise terms of the agreement.

*Appalachian Regional Healthcare, Inc. v. United Steelworkers of America*, 245 F. 3d 601, 603 (6th Cir. 2001):

The Highway Contractors Agreement provides:

> [T]he employer agrees to notify the Union, when new, additional or replacement employees are needed....The decision with regard to the hire and tenure of all employees shall be made by the Employer. The Contractor shall be the sole judge as to the qualifications of any applicant for employment. . . .The Employer agrees to give preference of employment to equally qualified applicants residing within the above mentioned applied to employment and reduction of force. The contractor will assist Local No. 181 in its efforts to get outside contractors to use local people on their projects. The Union and Employer both agree to recognize, cooperate with and actively participate in training programs.

Plaintiff argues that the Arbitrator "re-wrote" the Agreement. Specifically, by concluding that Southern Ohio violated the Agreement by using its own employees on the project, the arbitrator rewrote the Agreement to provide that Southern Ohio was required to use only Local 181 members *and* that it was required to hire every member referred by Local 181, even to the exclusion of its own employees. Plaintiff asserts that the Arbitrator imposed additional obligations on Southern Ohio that were not in the Agreement and also took away the management rights given to Southern Ohio regarding its right to make its own hiring decisions.

11

Defendant argues that no new obligations were imposed and that the arbitrator was faithful to the essence of the contract. The Court agrees. Past practice demonstrates that Southern Ohio understood the agreement and benefitted from it. Southern Ohio breached the Agreement when it did not hire member of the Union. The arbitrator's award makes the Union whole again and there no legal basis to vacate the Award.

IV.

The parties agreed to the arbitration and are bound by the arbitrator's award due. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment Against Southern Ohio Trenching and Excavating, Inc. be **SUSTAINED**.

This 12th day of January, 2017.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge